**Joseph Moses COCHRAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–89–00374–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 1990.

William T. Cornelius, Cornelius, Durham and Salhab, (Douglas M. Durham, of counsel) on Appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Cheryl Boyd, and Ruben Perez, Asst. Dist. Attys., Harris County, for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

The court found appellant guilty of retaliation and, after finding one enhancement paragraph true, assessed punishment at 15 years confinement.

The grand jury indictment alleged:

Joseph Moses Cochran ... on or about August 3, 1988, did then and there unlawfully intentionally and knowingly threaten to harm [complainant], hereafter styled the Complainant, by an unlawful act, namely by threatening in a letter to assault the Complainant by threatening to "suck [her] pussy til it bleed", in retaliation for and on account of the service of the Complainant as a prospective witness and informant.

In three points of error, appellant attacks the sufficiency of the evidence to support his conviction.

Since 1985, complainant has worked as a television news reporter in Houston. Complainant reported a story about two children who had disappeared. Following this report, complainant received a phone call from a person identifying himself as "Stacey." This person said he knew the whereabouts of the two children because he and several other people kidnapped the children. Complainant told the juvenile authorities about the phone call. The person repeatedly phoned complainant about the children, so complainant suggested they meet. Complainant went to the meeting place with a wireless microphone and police backup, but apparently "Stacey" did not appear at the meeting place. A charge of false report was filed against appellant.

Complainant testified that she was a prospective witness in the false report case filed against appellant. After appellant was sentenced on this charge, a person, identifying himself both as "Stacey" and

Joseph Cochran, began to phone complainant from the Harris County jail. After he was released from jail, a person identifying himself as "Stacey" went to the television station three or four times looking for complainant. He told the nighttime answering service and the receptionist that he was going to kill complainant, and said complainant ruined his life because she was the reason he had to go to jail. As a result of these visits, plus threatening calls to complainant, appellant was sentenced to 10 years confinement on a retaliation charge. Complainant said all of the phone calls were made by the same voice. Complainant testified that she was a prospective witness in that retaliation case.

Thereafter, complainant received several letters from a person housed at the Texas Department of Corrections. The writer always signed the name "Stacey," and the envelope usually would bear appellant's name and return address in someone else's handwriting. The handwriting was similar in all of the letters, except for one postcard written in block print. Many of the letters contained threats to kill complainant; the postcard said Moses would kill complainant for sending Moses to prison. Moses is appellant's middle name.

Complainant received another letter postmarked August 3, 1988. She opened this letter while wearing gloves as the police had instructed her. After reading the letter, complainant made several xerox copies of it, and forwarded the letter to the district attorney's office. Complainant said her first reaction to the letter was revulsion, and that the letter made her "blood run pretty cold" because she knew appellant soon would be released, and she believed he would return to Houston and look for her. Complainant testified that she was fearful for her life upon appellant's release, and that she always has been afraid of appellant.

The police obtained a fingerprint from the August letter. The print matched appellant's fingerprints.

In his first point of error, appellant contends that the trier of fact erred in finding sufficient evidence to prove the identity of appellant as the perpetrator of the offense alleged.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied*, —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim. App.1984). Where circumstantial evidence is involved, the circumstances must exclude every other reasonable hypothesis, except that of the guilt of the defendant. *Moore v. State*, 640 S.W.2d 300, 302 (Tex.Crim. App.1982). Proof that amounts only to a strong suspicion or mere probability is insufficient to support a conviction. *Id.*

Appellant maintains that the only evidence connecting him to the letter is the testimony of the State's fingerprint expert, who identified appellant's fingerprint on the August 1988 letter. Appellant argues that appellant's fingerprint could have been left on another occasion; perhaps appellant furnished the paper to a third party who wrote the letter. Appellant bolsters this hypothesis by pointing to evidence that two distinct writing styles were on the envelope and letter.

Appellant had a history of verbally threatening complainant. After appellant was convicted for the offense of retaliation the first time, complainant began receiving letters signed "Stacey" from the Texas Department of Corrections. The envelopes of these letters usually bore appellant's name, "Joseph Cochran." Appellant had previously told complainant that "Stacey" was his nickname. Many of the other letters contained threats to kill complainant for

sending appellant to prison. In August 1988, Appellant was still incarcerated in facilities of the Texas Department of Corrections. The letter postmarked August 3, 1988, was in an envelope with the following return address: Joseph Cochran # 419589, Coffield Unit, P.O. Box 150, Tennessee Colony, Tex. 75861. Appellant's right thumbprint was found on the back of the second page of the letter.

We find that the evidence, viewed in the light most favorable to the judgment, excludes every other reasonable hypothesis, except that of the guilt of appellant. Appellant's first point of error is overruled.

In his second point of error, appellant maintains that the trier of fact erred in finding sufficient evidence to prove that appellant's alleged conduct was unlawful.

Section 36.06 of the Texas Penal Code defines retaliation as follows:

(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, prospective witness, or informant.

(b) For purposes of this section, "informant" means a person who has communicated information to the government in connection with any governmental function.

(Vernon Supp.1989).

Appellant first argues that the State had the burden to prove that appellant committed the unlawful act of *assault* by intentionally or knowingly threatening *imminent* bodily injury. Appellant maintains that bodily injury to complainant could not have been imminent because appellant was in prison. He points to complainant's testimony that she was fearful for her life upon appellant's release from prison, which she expected to occur two months from August 1988.

■ We do not agree with appellant's position that the State must prove the danger of imminent bodily injury under the retaliation statute. The Court of Criminal Appeals has held that a threat to kill a judge is sufficient to sustain a conviction of retaliation, even though the threat was made while the defendant was in jail. *Doyle v. State*, 661 S.W.2d 726, 727–29 (Tex.Crim.App.1983).

Appellant next argues that the "Stacey" letters, viewed as a whole, suggest the intent of the statements was not to threaten complainant, but to communicate the author's intense emotions, lust, and desire toward complainant. The August 1988 letter states in part:

you made me look like a dam fool in 1985. and i am not never going to forget that [complainant] ... i am not going to never forget in my hold life time that [complainant] that i will always and forever love to the end of time had me put away for ten fucking long years in t.d.c. thank you verry much. i love you for it ... i don't give a dam no more what i do ... you did what you had to do. now i am sorry that i am going to do what i want to do for now on and what that is i will only no. you fuck over me real bad ... and like hell if i am going to forget that.

■ A rational trier of fact could conclude that the above language, thanking complainant for putting him away in prison and telling complainant that he loves her for it, is sarcastic, and that the true intent of the letter is to threaten complainant.

Complainant testified that, in the other letters, the writer explicitly threatened to kill complainant because she was the reason he was in jail. Evidence of extraneous offenses may be considered to show intent. *Sewell v. State*, 629 S.W.2d 42, 46 (Tex.Crim.App. [Panel Op.] 1982). We hold that the evidence is sufficient for a rational trier of fact to conclude that appellant intentionally or knowingly threatened to harm complainant by an unlawful act in retaliation for her part in having him incarcerated.

We overrule point of error two.

In his third point of error, appellant argues that the trier of fact erred in finding any evidence to prove that appellant's alleged unlawful conduct was in retaliation for complainant's service as a prospective witness or informant.

Appellant argues that a fatal variance exists between the indictment and the proof because no evidence was offered to prove that complainant's service at the time of the August 1988 letter was as a "prospective witness or informant." Appellant cites *Benson v. State*, 661 S.W.2d 708, 714 (Tex.Crim.App.1983) (op. on second reh'g), where the Court of Criminal Appeals held that a victim was a "prospective witness" and not a "witness" when no trial had taken place. Here, appellant maintains that complainant was a "witness" and not a "prospective witness," because the trial on the first retaliation charge had taken place.

There is nothing in the record demonstrating to this Court that complainant was indeed a trial witness in connection with appellant's first retaliation conviction. Complainant testified that she had never seen appellant before seeing him in the courtroom at the trial in the present case, and that she was a "prospective witness" for the prior offense. Thus, there is evidence that complainant was a "prospective witness," and no evidence that complainant had actually been a "witness" at the time she received the August 1988 letter.

In any event, the indictment also alleged that complainant was an "informant." Thus, if there is evidence that complainant was an "informant," there is not a fatal variance between the indictment and the proof. In *Sewell*, the Court of Criminal Appeals held that, because the complainant reported the occurrence of the burglary to the police, the complainant acted as an informant under Tex. Penal Code Ann. § 36.06 (Vernon Supp.1989). 629 S.W.2d at 44.

In the present case, complainant acted as an informant by reporting to the police the facts necessary to convict appellant for retaliation the first time. Thus, there is no fatal variance between the indictment and the proof.

We overrule point of error three.

We affirm the judgment.