**Leo Wayne COVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–93–00323–CR.**

Court of Appeals of Texas,
Tyler.

June 30, 1995.

Discretionary Review Denied Nov. 22, 1995.

Leo Wayne Cover, for appellant.

Charles Mitchell, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

A jury found Appellant guilty of retaliation and assessed his punishment at 25 years in prison. Filing a *pro se* brief on appeal,

Appellant assigns 13 points of error. We will affirm.

At the time of trial, Appellant was an inmate at the Texas Department of Criminal Justice–Institutional Division ("TDCJ–ID") serving a 50 year sentence as a result of a conviction for aggravated robbery. The complainant and principal witness against Appellant regarding Appellant's conviction for aggravated robbery was Ray Alexander ("Alexander"). After Appellant's conviction, Appellant wrote a letter to Alexander asking him to recant his testimony in an effort to secure Appellant's release from prison. This letter formed the basis of Appellant's subsequent prosecution for retaliation.

In his first point of error, Appellant claims that the District Attorney, Charles Mitchell, vindictively prosecuted him for retaliation. Appellant contends that the retaliation charges were filed against him because he filed post-trial writs of *habeas corpus* proceedings alleging that Charles Mitchell had condoned the testimony of Alexander, which Appellant alleges was perjured. The State stipulated that the indictment against Appellant for retaliation was returned by the grand jury after Appellant's third application for writ of *habeas corpus* was filed.

Appellant cites numerous cases in support of his position which we have determined are distinguishable from the facts of this case. For instance, Appellant cites *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In *Blackledge*, a North Carolina prison inmate had an altercation with another prisoner and was convicted in State District Court of the misdemeanor offense of assault with a deadly weapon. While the defendant's appeal was pending *de novo* in Superior Court, the prosecutor obtained a felony indictment against the defendant for assault with a deadly weapon, which was based upon the same incident that was the basis of the defendant's misdemeanor conviction. The Supreme Court held that the defendant's indictment on the felony charge violated the DUE PROCESS CLAUSE. The Court reasoned that a person convicted of a misdemeanor is entitled to a trial *de novo* without apprehension that the State will retaliate and substitute a more serious charge, thereby subjecting the person to an increased period of incarceration. Because the State had originally chosen to proceed against the defendant with a misdemeanor charge, the State was precluded from pursuing a more serious felony charge against the defendant. All of the cases cited by Appellant involve the State's attempts to prosecute a defendant for the same offense rather than the State's attempt to prosecute a defendant for a totally separate offense or set of facts as we have here.

■ We have also reviewed the opinion issued by the Court of Criminal Appeals regarding the writ of *habeas corpus* proceedings that were conducted when Appellant was found guilty of aggravated robbery. Nothing in those proceedings indicates that Charles Mitchell, as the prosecuting attorney, sponsored perjured testimony. The evidence does show that the victim of the retaliatory letter, Alexander, and the Sheriff of Sabine County, were the people responsible for pursuing retaliation charges against Appellant rather than Charles Mitchell. It is incumbent upon Appellant to prove his allegations of vindictive prosecution. *Ex parte Bates*, 640 S.W.2d 894, 895 (Tex.Cr.App. 1982). The premise upon which Appellant bases his claim of vindictive prosecution is without any factual support in the record. Appellant's first point is overruled.

■ In his second point, Appellant argues that the court lacked jurisdiction to convict him because the TEXAS PENAL CODE is void. Appellant points out that in 1973, the State Legislature enacted Senate Bill 34, Act 63, legislative chapter 399, which became effective January 1, 1974. Appellant claims that this bill violated Article 3, section 35 of the TEXAS CONSTITUTION because it contained more than one subject; therefore, Appellant contends that the bill was void at its inception. He maintains that Article 3, section 35 of the TEXAS CONSTITUTION, prohibits "log-rolling." "Log-rolling" occurs when several subjects are included within one bill that have no connection to each other. Appellant argues that any bill which violates the "one subject" rule is void at its inception. We do not agree.

■ The TEXAS PENAL CODE was enacted by the legislature with the intent that it would be construed as a systematic whole, and it should be interpreted in light of that legislative purpose. *Day v. State,* 534 S.W.2d 681, 683 (Tex.Cr.App.1976). The TEXAS PENAL CODE does address various subject matters, but that does not necessarily mean that the TEXAS PENAL CODE is unconstitutionally multifarious. In referring to the ELECTION CODE, the Supreme Court of Texas has observed, "[S]ince the Legislature undoubtedly has as much power to enact a Code as it does a single law of narrowest scope, and since any sort of 'Code' necessarily involves many different kinds of individual provisions, nothing of these latter will violate the 'one subject' restriction, if it has any logical relationship to the general subject." *Ex parte Jimenez,* 159 Tex. 183, 317 S.W.2d 189, 190 (1958). In light of the Supreme Court's reasoning in *Jimenez,* we decline to hold that the PENAL CODE is unconstitutional. Appellant's point two is overruled.

■ In point three, Appellant claims that his conviction was void because the Grand Jury returned an indictment against him that contained an enhancement. Appellant did not file a motion to quash or make any other objection to the enhancement paragraphs in the indictment before or during trial. Under TEXAS RULES OF APPELLATE PROCEDURE 52(a), Appellant's error is waived. TEX.R.APP.P. 52(a). However, we will address this issue because this is a *pro se* appeal.

Appellant supports his contention by quoting Articles 20.09 and 21.01 of the TEXAS CODE OF CRIMINAL PROCEDURE and Section 12.42(d) of the TEXAS PENAL CODE. Article 20.09 of the TEXAS CODE OF CRIMINAL PROCEDURE provides that, "The Grand Jury shall inquire into all offenses liable to indictment." TEX.CODE CRIM.PROC.ANN. art. 20.09 (Vernon 1989). Article 21.01 provides that "An indictment is the written statement of the Grand Jury accusing a person therein named of some act or omission by which law is declared to be an offense." TEX.CODE CRIM. PROC.ANN. art. 21.01 (Vernon 1989). Section 12.42(d) of the TEXAS PENAL CODE provides that the enhancement of offenses are not "offenses." TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1994). Appellant reasons that if enhancements are included in an indictment, the indictment is void because the enhancement was not an "offense" that was returned by the Grand Jury. We do not agree.

■ To use a prior conviction against a defendant in connection with the primary offense in Texas, the prior conviction must be alleged in the indictment. *Rogers v. State,* 168 Tex.Crim. 306, 325 S.W.2d 697, 699 (App. 1959). This Rule was modified by the enactment of Article 37.07, the TEXAS CODE OF CRIMINAL PROCEDURE, in 1965, which allowed prior convictions only to be admitted at the punishment phase of the trial. *Only those prior convictions alleged in the indictment can be used for enhancement of punishment. White v. State,* 500 S.W.2d 529, 530 (Tex.Cr. App.1973). The source of an indictment is the Grand Jury; therefore, it follows that an allegation of prior offenses must be contained in an indictment so that the prior offenses can be proven at trial for enhancement of the sentence. Appellant's point three is overruled.

In his fourth point, Appellant contends that the trial court was without jurisdiction to try his case in state court until the federal court had ruled on his pre-trial motion to remove his case to federal court. Section 1446(c)(3) of 28 U.S.C.A., which governs the removal of criminal prosecution from state court to federal court, provides:

The filing of a notice of removal of a criminal prosecution shall not prevent the State Court in which such prosecution is pending from proceeding further, except a judgment of conviction shall not be entered unless the prosecution is first remanded.

Here, the record reflects that the federal court remanded Appellant's request for removal on December 3, 1993, and judgment was not entered in the present case until December 7, 1993. Therefore, Appellant's fourth point is without merit and is overruled.

■ In his fifth point, Appellant complains that he did not receive a fair and impartial verdict from the jury because a number of the jurors knew the complainant, Ray Alexander. The record reflects that

Alexander was the owner of the *El Torro Restaurant* in Hemphill, Texas. At trial, many of the jurors admitted they knew Alexander, and some of the jurors had taught Alexander's children in school. Appellant contends the court should have presumed that these jurors were biased against him and should have taken each juror on *voir dire* to determine if the jurors could render an impartial verdict. A reading of the record shows that all of Appellant's challenges for cause were granted and that Appellant's *voir dire* of the jury panel was not restricted in any way. Appellant made no objection to the venire, nor did he make any objection to any individual juror who was seated on the panel. To preserve error on appeal, Appellant must have made an objection contemporaneous to the action or inaction of the trial court. *Montoya v. State,* 744 S.W.2d 15, 18 (Tex.Cr. App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). Point five is overruled.

■ Appellant complains in his sixth point that the trial court erred when it denied his motion for a change of venue. Prior to trial, Appellant filed a motion for a change of venue alleging that the jury panel was biased and prejudiced against him. Article 31.03, of the TEXAS CODE OF CRIMINAL PROCEDURE provides:

(a) A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the Defendant supported by his own *affidavit* **and the affidavit of at least** *two credible persons,* residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine:

TEXAS CRIM.PROC.CODE ANN. § 31.03 (Vernon 1993). Absent a showing of an abuse of discretion, the trial court's ruling on a change of venue motion must be affirmed. *Hathorn v. State,* 848 S.W.2d 101, 102 (Tex.Cr.App. 1992).

■ In examining the record, we note that no affidavit was attached to Appellant's motion as provided by Article 31.03. The trial court stated in the record that it would rule on Appellant's motion to change venue after *voir dire.* Nothing occurred during *voir dire* that necessarily demonstrated grounds for a change of venue and no further action was taken by the court; therefore, it appears that the court properly overruled Appellant's defective motion. Point six is overruled.

In point seven, Appellant claims that the trial court committed reversible error in denying his application to subpoena two witnesses which we presume were psychiatrists. Appellant attempted to prove that he was insane at the time he wrote the letter to Alexander. Appellant claims that two psychiatrists executed affidavits regarding Appellant's mental state during the time that he committed the crime. However, no such affidavits appear with his application for subpoenas or anywhere else in the record.

■ We do find an application for out-of-county subpoenas in the record. In this application, he requests the presence of eleven (11) witnesses, all of whom were employed at the TDCJ–ID. None of the applications for subpoenas are sworn in accordance with Article 24.03 of the TEXAS CODE OF CRIMINAL PROCEDURE. TEX.CODE CRIM.PROC.CODE ANN. § 24.03 (Vernon 1993). We also note that two pre-trial hearings were conducted by the court to determine which witnesses Appellant intended to testify in support of the affirmative defense of insanity which Appellant had raised.

The State stipulated that the treating physician's medical records regarding Appellant's mental condition in prison could be admitted into evidence. Appellant and his attorney agreed on the record that the testimony of the 11 witnesses could be reduced to the testimony of mental health workers Jennie McCloughland, Jerry Barrett, and Mary Frances Melloms, if their medical records were also produced.

At trial, Appellant's entire medical records were offered into evidence. These records revealed that Appellant had exhibited symptoms of schizophrenia, anti-social personality disorder, and substance abuse. In addition, Appellant filed a motion for psychiatric evaluation and the court appointed Dr. Kartye to examine Appellant. Dr. Kartye testified that

he had reviewed all of Appellant's prison medical records. It was Dr. Kartye's opinion that Appellant was "insane" at the time of the commission of the offense due to a severe mental defect or disease, and that Appellant would not have known the letter that he had written to Alexander was wrong.

After reviewing all of the facts, we conclude that the trial court did not err when it failed to grant Appellant's application for two additional witnesses, and that Appellant was not harmed by the court's ruling. Point seven is overruled.

In point eight, Appellant claims that his conviction is void because the indictment charged Appellant with more than one non-property offense in a single count. The indictment pled that:

[T]he Defendant ... did then and there intentionally and knowingly harm and threaten to harm another, to-wit: RAY ALEXANDER, by an unlawful act, to-wit: causing RAY ALEXANDER serious bodily injury, and bodily injury, and harm, in retaliation for and on account of the service of the said RAY ALEXANDER as a witness and a prospective witness, the said harm and threat to harm RAY ALEXANDER being contained in a letter from the Defendant to be received by RAY ALEXANDER in Sabine County, Texas, of the face and tenor following....

[Copy of the letter was attached here]

Appellant filed a pre-trial motion to quash the indictment because it charged Appellant with more than one non-property offense in a single count. We hold that the indictment is not defective in this case. TEXAS CODE OF CRIMINAL PROCEDURE, Article 21.24 provides:

(a) at least two or more offenses may be joined in a single indictment ... with each offense stated in a separate count, if the offense arises out of the same criminal episode, as defined in Chapter 3 of the Penal Code;

(b) a count may contain *as many separate paragraphs charging the same offense*, but no paragraph may charge more than one offense;

(c) a count is sufficient if any one of its paragraphs is sufficient.

TEX.CODE CRIM.PROC.ANN. art. 21.24 (Vernon 1989).

An indictment may contain as many paragraphs as necessary to allege the various manner and means of committing one offense. *Riley v. State*, 658 S.W.2d 818, 820 (Tex.App.—Fort Worth 1983, n.w.h.). When such methods of committing the offense are alleged conjunctively, proof of any of the ways charged in the indictment will support a conviction. *Sidney v. State*, 560 S.W.2d 679, 681 (Tex.Cr.App.1978). In this case, no improper misjoinder of non-property offenses is in the indictment. The indictment merely states the different manner and means of committing the same offense. *Martinez v. State*, 498 S.W.2d 938, 940 (Tex.Cr.App.1973). Point eight is overruled.

In his ninth point, Appellant challenges the sufficiency of the evidence to prove that the letter he sent to Alexander was a threat to harm Alexander. In reviewing a sufficiency point in a criminal case, we are required to view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Viewing the evidence in such light, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Buxton v. State*, 699 S.W.2d 212, 213 (Tex.Cr.App.1985), *cert. denied*, 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986).

Section 36.06 of the TEXAS PENAL CODE defines "retaliation" as follows:

(a) a person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, prospective witness, or informant.

TEX.PENAL CODE ANN. § 36.06(a) (Vernon Supp.1989).

The letter Appellant wrote to Alexander read as follows:

Mr. Ray Alexander,

Hello Ray, I hope all is well for you and your two boys.

I'm sure that you will remember me. I am the man you testified that robbed you. The man you falsly [sic] identified and lied on, on the witness stand. Because either Thomas Ladner or the D.A. coached you into it!

Well Ray—since I have been locked up my son—you remember him don't you—he was 3 years old when you saw him at the jail. Well he is dead of a brain tumor—my mother has died and my father [is] dying from loosing her. Yea [sic]—I had parents! Like most other people.

The point of this letter Ray is to ask you to recant your testimony. To make an affidavit or write one & have two witnesses sign it or notorized [sic] that you feel you may have made a mistake when you identified me in court! Those things do happen Ray, and you let the kid who robbed you go Ray, and put me here in James Ronald (Dan) Lynch's place Ray. I think you know that. Because his tramp mother lied too Ray. And your tramp ex-wife Donna who was fucking Robert Hicks and set you up was set free Ray. You know Robert who lived with Faye Inge who told you it was me not her prescious [sic] son who robbed you Ray. You remember?

But Ray, you choose [sic] to put me in here, and you fucked up my family life Ray. My son is dead, my wife [is] falling apart, my mother gone and Dad close.

But Ray, I'm back in court, and your perjured testimony helped me get there, you remember Ray, saying at the Revokation [sic] hearing you could not I.D. me and at Roberts trial it was him who taped you ect, [sic] and at my trial you say me! Oh Ray,—do you know I have one hell of a law suit getting put together—oh my what a conspiracy.

You know Ray that the D.A. coached you—possably [sic] Thomas Ladner, and Ray, I want you to make out an affidavit as such, of course I understand you were scared and under pressure. But with your help to make ammends [sic] for falsly [sic] costing me 4 years of my life I'll forget, and I'll be out in a year. If you don't help I'll be out in 2 years Ray anyway. Gee not too long!

About time for your boys to go to college isn't [it] Ray—a financial burden, how is your home behind those apartments Ray? Comfortable? Well I hope I don't see you soon Ray—but who knows what the future may hold. This place can really turn a heart to stone Ray—sometimes a bit of understanding from the free can be a great remedy! Let me hear from you Ray!

Respectfully,
/s/ Leo W. Cover

Appellant maintains that the words he used in his letter do not convey harm to Alexander. Appellant points out that "harm" is defined in Section 1.07 of the TEXAS PENAL CODE as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person and whose welfare the person affected is interested." TEX.PENAL CODE ANN. § 1.07 (Vernon 1994). Appellant argues that the letter is too vague to communicate a declaration of intent to inflict injury to Alexander, and that it completely fails to communicate any unlawful act or forbidden conduct. We believe Appellant's argument is without merit.

In *Cochran v. State,* the Court determined that a letter received by the complainant from an inmate thanking her for putting him away in prison and expressing his love for her was sufficient to constitute a threat. *Cochran v. State,* 783 S.W.2d 807 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). The inmate in that case argued that he was merely communicating his intense emotions, lust, and desire, toward the complainant. The Court concluded that a rational trier of fact could find that such language was sarcastic and that the *true intent* was to threaten the complainant.

We have considered the totality of the circumstances that existed between Appellant and Alexander in this case under *Jackson v. Virginia,* and hold that the letter was a threat to Alexander. *Jackson,* 443 U.S. at 307, 99 S.Ct. at 2783. Alexander was the complainant who had also testified against Appellant in the aggravated robbery trial which led to Appellant's conviction and incarceration. Alexander and Appellant were not related and they were not friends.

In his letter, Appellant addresses Alexander by his first name, implies that he knows facts about Alexander's children, and indicates that he knows where Alexander's family lives. Appellant then makes the statement that "prison hardens the heart." After viewing the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence to support the jury's finding that Appellant's "true intent" was to threaten Alexander in an effort to secure an early release from jail. Therefore, point nine is overruled.

■ In point 10, Appellant challenges the sufficiency of the evidence to support the jury's finding that he was sane at the time he wrote the letter to Alexander. "Insanity" is an affirmative defense; therefore, the accused must carry the burden of proof by a preponderance of the evidence. Section 8.01 of the TEXAS PENAL CODE, provides: (a) it is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong; (b) the term mental disease or defect does not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct. TEX.PENAL CODE ANN. § 8.01 (Vernon 1994). The purpose of the insanity defense is to determine whether the accused should be held responsible for the crime, or whether his mental condition will excuse holding him responsible.

■ While the defense of insanity is expressed in terms of "mental disease or defect," the issue is not strictly a medical one. The insanity issue invokes ethical and legal considerations as well. In *McGee v. State*, the court made a distinction between legal and medical insanity. From a medical standpoint, one may be insane by reason of mental disease or mania. *McGee v. State*, 155 Tex.Crim. 639, 238 S.W.2d 707, 709 (App. 1950). From a legal standpoint, one's mental condition must be such that the person is unable to distinguish right from wrong and is unable to know the nature and consequences of actions before the person can be exonerated or excused from a crime. *Id.* Only a jury can decide the ultimate issue of criminal responsibility. *Id.*

■ Appellant had the burden of proof to establish by a preponderance of the evidence that he was insane at the time of writing the letter in question. *Skidmore v. State*, 838 S.W.2d 748, 750 (Tex.App.—Texarkana 1990, pet. ref'd). To prevail in a legal insufficiency point, Appellant must show insanity as a matter of law. In reviewing whether a disputed matter has been established as a matter of law, we must first examine the record for evidence which supports the finding while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Only if there is no evidence to support the finding, do we examine whether the contrary is established as a matter of law.

■ It is uncontradicted that Appellant was under psychiatric care as a schizophrenic in prison. Both medical and lay testimony conflicted on the issue of insanity. Defense witness, Mary Mellon, a classification case manager with the TDCJ-ID, testified that defendant's case was assigned to her. Appellant was a member of the Aryan Brotherhood, an organization that will not associate with blacks or hispanics. To avoid working with or being around blacks or hispanics, Appellant had stated verbally and in writing that he would kill blacks or hispanics and stated the manner in which he would kill them. As a result, Appellant was detained in his cell or transferred to a prison where he would not have contact with blacks or hispanics. Mellon also told of an incident in which a knife was found hidden in a book in Appellant's cell.

Dr. Jerry Landrum, a clinical psychologist, testified that he had examined Appellant's prison medical records and that, in his opinion, Appellant was legally sane at the time he wrote the letter in question. Dr. Landrum stated that Appellant knew the difference between right and wrong. Landrum surmised that Appellant could have been feigning his own symptoms of mental disorder because each diagnosis of Appellant's mental illness was based almost entirely upon information that came from Appellant; *e.g.*, voices were telling Appellant what to do, etc. Dr. Landrum also pointed out that if Appellant

had thought he was doing the right thing when he wrote the letter, his threat to Alexander would have been direct, not veiled. Dr. Landrum further reasoned that if Appellant was truly delusional and insane, Appellant would not have hidden the knife. By hiding the knife, Appellant revealed that he did know right from wrong.

After reviewing all of the evidence, we conclude that Appellant failed to establish that he was insane by a preponderance of the evidence. The tenth point of error is overruled.

In point 11, Appellant claims that his due process rights were violated when he was denied a speedy trial. Appellant alleges that the State knew about his letter to Alexander almost three years prior to the indictment and failed to take immediate action to indict him. Appellant filed a motion for a speedy trial which was overruled. Appellant points to an excerpt from the record where the prosecutor stated that he was not in any hurry to seek an indictment or do anything because Appellant was in the "pen."

▇▇▇ The Sixth Amendment to the UNITED STATES CONSTITUTION provides that an accused shall enjoy the right to a speedy public trial. The question of whether the constitutional right to a speedy trial has been denied is decided on a case-by-case basis. *Barker v. Wingo,* 407 U.S. 514, 522–23, 92 S.Ct. 2182, 2187–88, 33 L.Ed.2d 101 (1972). Former CODE OF CRIMINAL PROCEDURE article 32.02A provided that criminal defendants in Texas enjoyed a statutory right to be brought to trial within a certain specified time limit; however, this statute was declared unconstitutional by the Court of Criminal Appeals as a violation of the separation of powers doctrine. *Meshell v. State,* 739 S.W.2d 246, 257 (Tex.Cr.App.1987). Therefore, there is no right to a speedy trial other than that recognized by the federal and state constitutions. In any event, the constitutional right to a speedy trial does not attach until the defendant becomes an accused. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). An individual becomes an accused when he or she is arrested or when the charging instrument is filed, whichever occurs first. *Id.* 404 U.S. at

321, 92 S.Ct. at 463–64; *see Stewart v. State,* 767 S.W.2d 455, 457 (Tex.App.—Dallas 1988, pet. ref'd). What the courts basically seek, is: (1) to avoid oppressive pre-trial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired. *Wingo,* 407 U.S. at 514, 92 S.Ct. at 2182.

▇▇▇ In the present case, the alleged offense took place on May 23, 1990, and the indictment was presented on May 11, 1993. There is nothing in the record to indicate that Appellant was under any detainer or warrant prior to the indictment. Appellant can show no pre-trial incarceration because he was already imprisoned. Appellant has not shown in what manner or means he was harmed by the delay in the pre-accusation process. The District Court covering Sabine County sits in different counties at different times. Appellant was tried within a reasonable time after he was indicted, and his defense was not impaired in any way. Therefore, point 11 is overruled.

Appellant's point 12 alleges that he "was denied due process of law and deprived of a fair trial guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution as well as Article I, section 10 and 19 of the Texas Constitution, due to prosecutorial and judicial misconduct or responsibility." Specifically, Appellant complains of misconduct by the trial court and the prosecutor. This point is enmeshed within the points of error that we have already addressed above. Point 12 is overruled.

In Appellant's thirteenth point of error, he asks us to consider the cumulative effect of the errors that occurred throughout the trial. We have reviewed Appellant's points and have found no such error. Therefore, the thirteenth point is overruled.

Having found no error by the trial court, the judgment is affirmed.