COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-412-CR
  
  
JOHN WILLARD HOWARD                                                      APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
John Willard Howard was convicted by a jury of the offense of criminal 
nonsupport, a state jail felony.[1]  The jury 
assessed punishment at two years’ confinement with no fine. In two points, 
Appellant challenges the legal and factual sufficiency of the evidence to 
support the jury’s rejection of his affirmative defense that he could not 
provide support for his children.[2]  We will 
affirm.
I. FACTUAL BACKGROUND
        After 
five years of marriage, Appellant divorced Lisa Ramirez in 1992. The court 
ordered Appellant to pay $50.00 each week for the support of their three 
children. According to Ramirez, Appellant had never made any of the 
court-ordered payments, and documents from the Tarrant County Child Support 
Office, which is charged with receiving and forwarding such payments from 
Appellant to Ramirez, likewise reflected that no payments had been made. 
Further, Hood County District Attorney’s Office Investigator Thelbert Milsap 
testified that, between December 1998 and December 2001, Appellant made no child 
support payments. Because Appellant only challenges the legal and factual 
sufficiency of the evidence pertaining to his claimed inability to provide 
support for his children, we will forgo a more detailed factual discussion and 
will lay out the facts pertinent to his points in our analysis of those claims.
II. LAW OF CRIMINAL NONSUPPORT
        A 
person commits the offense of criminal nonsupport if he or she intentionally or 
knowingly fails to provide support for his or her child younger than eighteen 
years of age, or for his or her child who is the subject of a court order 
requiring that person to support the child.[3]  
While the State does not bear the burden of proving the defendant’s ability to 
pay, “[i]t is an affirmative defense under [section 25.05] that the actor 
could not provide support for the actor’s child.”[4]  
The defendant has the burden of proving an affirmative defense by a 
preponderance of the evidence.[5]
III. STANDARDS OF REVIEW
        After 
outlining relevant facts in his brief, Appellant argues his sufficiency points 
by citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 
(1979), Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), and Griffin 
v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981).[6]  
These cases generally govern legal and factual sufficiency review of elements of 
the offense on which the State carries the burden of proof at trial.[7]  Neither Appellant nor the State address the proper 
standards of review that are applicable to this case.
        A. Legal Sufficiency Jurisdiction
        Appellant 
challenges the legal and factual sufficiency of the evidence to support his 
affirmative defense that he could not provide support for his children—an 
implicit finding on which Appellant had the burden of proof at trial.[8]  With respect to a legal sufficiency review of a 
jury’s rejection of a criminal defendant’s affirmative defense, there is not 
a consensus among the courts of appeals as to whether such a review is 
permissible.[9]  Because there is confusion among 
the courts, and in light of Zuniga, 2004 WL 840786, at *7, we reconsider 
the standard we applied in our unpublished decision Gonzalez, 2003 WL 
21101520, at *2, and more precisely set forth the proper legal standard of 
review for a criminal defendant’s legal sufficiency challenge to the trier of 
fact’s rejection of his or her affirmative defense.
        We 
think it is helpful to provide a brief historical backdrop before turning to Gonzalez.[10]  Eleven years before Clewis, in which the 
court of criminal appeals developed factual sufficiency review in criminal 
cases, the court addressed “the proper standard of review to be used by the 
court[s] of appeals . . . in criminal cases involving an affirmative defense.”[11]  Van Guilder rejected a factual sufficiency 
review standard and crafted a quasi-Jackson standard:
  
[I]n 
reviewing a case involving an affirmative defense, the court of appeals must 
review the evidence on the affirmative defense by looking at the evidence in the 
light most favorable to the implicit finding by the jury with respect to such 
affirmative defense and then determine, by examining all the evidence concerning 
the affirmative defense, if any rational trier of fact could have found that the 
defendant failed to prove his defense by a preponderance of the evidence. The 
court of appeals is limited in its review using this preponderance standard to 
evidence submitted on the issue of the affirmative defense in question. This 
review is called for when the defendant is contesting the sufficiency of the 
evidence to support his conviction because of his assertion that he adequately 
proved his affirmative defense. It is important to note that this analysis does 
not involve the appellate court in any fact finding function. The test 
evaluates the legal sufficiency of the evidence using a legal standard. 
There must be no reweighing or reclassifying of the evidence by the appellate 
court.[12]
 
  
        Five 
years after deciding Van Guilder, the court of criminal appeals revisited 
and overruled Van Guilder in Meraz.[13]  
In Meraz, the court “reviewed the jury’s failure to find the elements 
of the defendant’s affirmative defense” and enunciated the factual 
sufficiency standard of review for such cases.[14]  
Meraz rejected a “prototype Jackson standard of review 
concerning questions of fact or questions concerning the great weight and 
preponderance of the evidence,” reasoning that Jackson’s standard 
“is not a constitutional standard imperative to determining whether a 
defendant sustained his burden of proof in presenting an affirmative defense.”[15]  In place of such a standard, Meraz adopted 
the civil standard used “when the jury fails to find affirmatively on an issue 
on which the appealing party had the burden of proof,” holding that, the 
appellate court must determine whether, after considering all the evidence 
relevant to the issue at hand, the judgment is so against the great weight and 
preponderance of the evidence as to be manifestly unjust.[16]
        While 
Meraz specifically permits factual sufficiency review, the question Meraz 
seemingly left unanswered is whether the court of criminal appeals, in 
overruling Van Guilder, intended for intermediate courts of appeals to 
review a factfinder’s rejection of an affirmative defense solely under a 
factual sufficiency standard and to the exclusion of a legal sufficiency 
standard.[17]  The Meraz court fashioned 
a factual sufficiency review standard concerning the rejection of a criminal 
defendant’s affirmative defense at a time before Clewis, 922 S.W.2d at 
129, drew a clear distinction between legal and factual sufficiency challenges 
in criminal cases, and Meraz enunciated that a court of appeals is 
“vested with the authority to review fact questions in criminal cases.”[18]
        Thus, 
in overruling Van Guilder, Meraz expressly permitted factual 
sufficiency review of the rejection of an affirmative defense—a review that Van 
Guilder did not allow. But Meraz was not faced with a legal 
sufficiency complaint and did not hold that a criminal defendant would be 
precluded from challenging the legal sufficiency of the evidence in support of 
the trier of fact’s failure to find his or her affirmative defense. Simply 
put, neither Van Guilder nor Meraz addressed the legal sufficiency 
standard applicable to the rejection of a criminal defendant’s affirmative 
defense because each decision—both of which predate Clewis—only 
analyzed if and how a defendant could challenge the factual sufficiency of the 
evidence supporting the jury’s rejection of his or her affirmative defense.
        We 
therefore disagree with the Houston (First District) Court of Appeals’s 
interpretation of Meraz in Patterson that appellate courts lack 
legal sufficiency jurisdiction when a defendant seeks appellate review of a 
jury’s failure to make a finding on an issue upon which the defendant carries 
the burden of proof, such as an affirmative defense.[19]  
Rather, in light of the development of legal and factual sufficiency review in 
criminal cases, we will follow the majority of Texas intermediate courts of 
appeals and will conduct a legal sufficiency review of the evidence pertaining 
to Appellant’s affirmative defense that he could not provide support for his 
children.[20]  Indeed, not to recognize the 
courts of appeals’ authority to review a legal sufficiency complaint 
concerning a defendant’s affirmative defense, as well as a factual sufficiency 
complaint, would ignore the legislature’s action vesting the courts of appeals 
with intermediate criminal jurisdiction.[21]
        B. Proper Standard of Review
        Having 
concluded that the court of criminal appeals has not dispatched with legal 
sufficiency review of a jury’s failure to make a finding on a criminal 
defendant’s affirmative defense, but by the same token has not provided clear 
guidance as to what the applicable standard is, we look to Zuniga as a 
guidepost in determining the proper legal sufficiency standard.[22]  In Zuniga, the court stated that “the 
burden of proof at trial dictates the standard of appellate review.”[23]
        Undoubtedly, 
the linkage between the burden of proof at trial and the appropriate standard of 
review on appeal provides the basis for Jackson, the seminal opinion 
concerning criminal legal sufficiency review.[24]  
Jackson recognized that consistent with fundamental due process 
requirements, no person may be convicted of a criminal offense unless criminal 
responsibility for the offense is proved beyond a reasonable doubt.[25]  Thus, Jackson rejected a no-evidence 
standard of review and required courts to determine not whether there is any 
evidence to support a state-court conviction, but to determine whether there is 
sufficient evidence to justify a rational trier of fact to find guilt beyond a 
reasonable doubt.[26]  That guilt must be proved 
beyond a reasonable doubt dictates the legal sufficiency standard of appellate 
review.[27]
        As 
Meraz recognizes, neither In re Winship nor Jackson 
“deal[] with due process requirements concerning the sufficiency of proof or 
the appellate review of an affirmative defense.”[28]  
A criminal defendant’s burden on a requested affirmative defense is proof by a 
preponderance of the evidence.[29]  In rejecting 
a quasi-Jackson standard for factual sufficiency challenges to 
affirmative defenses, Meraz adopted the civil appellate standard of 
factual sufficiency review, which is based upon the preponderance of the 
evidence burden of proof, applicable in most civil trials.[30]  
The court therefore linked the preponderance of the evidence burden of proof to 
the civil standard of appellate review.[31]
        Because 
Meraz draws from civil law in linking factual sufficiency review of a 
rejected affirmative defense to the preponderance of the evidence burden of 
proof at trial, it logically follows that the appropriate legal sufficiency 
standard of review is likewise found in civil law, in cases in which the burden 
of proof at trial is proof by a preponderance of the evidence.[32]  
Under the civil standard, if an appellant is attacking the legal sufficiency of 
an adverse answer to an issue on which he or she had the burden of proof, the 
appellant must overcome two hurdles.[33]  First, 
the record must be examined for evidence that supports the finding, while 
ignoring all evidence to the contrary. Second, if there is no evidence to 
support the finding, then the entire record must be examined to see if the 
contrary proposition is established as a matter of law.[34]  
We hold that the Sterner standard is the proper legal standard of review 
for a criminal defendant’s legal sufficiency challenge to the trier of 
fact’s rejection of his or her affirmative defense.[35]
        C. Reconsideration of Gonzalez
        Upon 
a closer examination of the post-Meraz cases allowing a legal sufficiency 
review of a rejected affirmative defense, we observe that there also exists a 
lack of consensus in the courts of appeals as to the proper legal sufficiency 
standard of review to be applied. Several decisions, including Moranza 
and Cover, apply the Sterner standard in determining whether an 
appellant established his or her affirmative defense as a matter of law.[36] In Cooney, the El Paso Court of Appeals, however, 
states the standard of review as follows:
  
When a 
defendant contends on appeal that he met his burden of proof as a matter of law, 
without evidentiary conflict, the appellate court should review all of the 
evidence bearing on the issue, in a light most favorable to the verdict, to 
determine if there was a basis upon which the jury could rationally 
reject the defense contention.[37]
 
 
The court provides no 
citation for this standard, but the language suggests that the court applied a 
modified-Jackson standard.[38] In Gonzalez, 
we cite Moranza, Cover, and Cooney, but we rely solely on Cooney’s 
language in stating the legal sufficiency standard of review: “In examining 
the legal sufficiency of the evidence supporting an affirmative defense, we 
review all the evidence in the light most favorable to the verdict and sustain 
the challenge only if there is no rational basis upon which the jury could have 
rejected the defense.”[39]
        For 
the reasons mentioned above, a modified-Jackson standard is inappropriate 
in reviewing the rejection of an affirmative defense.[40]  
Accordingly, while Gonzalez properly relies on Moranza and Cover—as 
they apply the Sterner civil standard—we conclude that Gonzalez’s 
reliance on Cooney’s modified-Jackson standard is misplaced.[41]  Although Gonzalez cited the correct legal 
sufficiency review standard in part, we overrule Gonzalez to the extent 
we relied on Cooney and applied a modified-Jackson standard.[42]
        D. Factual Sufficiency Standard
        With 
respect to factual sufficiency review of a rejected affirmative defense, Meraz 
provides that we must consider all the evidence relevant to the point of 
Appellant’s ability to provide support for his children and determine whether 
the verdict is so against the great weight and preponderance of the evidence as 
to be manifestly unjust.[43]  In our review, we 
may not usurp the function of the jury by substituting our judgment in the place 
of its verdict.[44]  We may only sustain 
Appellant’s factual sufficiency claim if, after detailing the relevant 
evidence and stating in what regard the contrary evidence greatly outweighs the 
evidence supporting the verdict, we also clearly state why the verdict is so 
against the great weight of the evidence as to be manifestly unjust, why it 
shocks the conscience, or why it clearly demonstrates bias.[45]
IV. APPLICATION OF LAW TO THE FACTS
        We 
first examine the record for evidence supporting the jury’s implicit finding 
that Appellant could provide support for his children.[46]  
During trial, Ramirez testified that Appellant received supplemental security 
income (SSI) in the estimated amount of $440 per month. Ramirez also stated that 
because Appellant received the family amount, she did not receive any money from 
SSI. She also testified that, while Appellant spent some time in prison, he 
received between $600 and $1,000 a month from rental property. According to 
Ramirez, Appellant routinely and intentionally “got hurt” while working so 
that he could sue his employers. In fact, Ramirez testified that Appellant 
settled one case for $43,000.
        The 
State also offered into evidence Appellant’s 1999 judgment of conviction for 
the offense of criminal nonsupport.[47]  
Further, Appellant’s friend and former employer David Hinkle testified that 
Appellant could work and that he had paid Appellant cash for “odd jobs.” 
When asked, “Was this to help him support his family,” Hinkle stated, 
“Yes.”
        We 
conclude that this evidence supports the jury’s failure to find that Appellant 
could not provide support for his children, and we need not reach Sterner’s 
second hurdle.[48]  Thus, we hold that the 
evidence is legally sufficient to support the jury’s adverse finding on 
Appellant’s affirmative defense. Accordingly, we overrule Appellant’s first 
point.
        We 
also conclude that the jury’s failure to find that Appellant could not provide 
support for his children is not against the great weight and preponderance of 
the evidence.[49]  Appellant points to the 
following evidence in support of his factual sufficiency claim: Ramirez 
testified that for nine months the children lived with Appellant, and she stated 
that Appellant “fed them [out of] dumpsters” and provided shelter for them, 
but did not clothe them. Ramirez also testified that neither she nor the 
children had received any gifts, presents, or things of value from Appellant 
since the divorce, but she testified that Appellant’s second ex-wife bought 
the children televisions from Wal-Mart.
        Ramierz 
agreed that Appellant was incarcerated between 1998 and August 2000. Appellant 
admitted documents from two different physicians that detailed his disabled 
status, but Ramirez maintained that Appellant was faking his injuries. Appellant 
attempted to rebut Ramirez’s claims that he was faking his injuries by showing 
the nature and extent of his disabilities and his inability to work while he was 
in jail.
        Hinkle 
testified that Appellant cared for his children but that “they didn’t have a 
lot of . . . financial resources.” Hinkle stated that he “knew [Appellant] 
was disabled since 1990.” While Hinkle testified that Appellant had a back 
injury, he also stated that Appellant could work.
        Hinkle 
also testified that Appellant was illiterate, could not write, and could not 
“comprehend . . . Mapscos.” On cross-examination, the State offered into 
evidence a letter written by Appellant to Hinkle, a letter that Hinkle admitted 
was a request for Hinkle “to slant [his] testimony toward[] [Appellant].” 
Appellant’s letter to Hinkle reads in pertinent part as follows:
  
David, 
here’s what I need you to do, if it comes down to it, if they say I worked for 
you, then I need you to tell them I only worked there on Holidays and when I 
just needed extra cash every now and then. And also that I took care of my kids 
the best to be expected from the best of a father.
 
. . . .
 
These 
people are trying to say I’m able to work, which we all know I can’t do 
this. I am disabled. So anything you would say would help in my case, that I 
only did very little, if you know what I mean.
 
 
Appellant also called 
his sister Diane Gray and his nieces Tonya and Sonja Gray, who testified about 
Appellant’s disabilities, his concern for his children, and his inability to 
provide financial support to them.
        In 
rebuttal, to show that Appellant could have provided support to his children, 
the State called Appellant’s son to the stand who testified that he had lived 
with Appellant for nine months, while Ramirez was incarcerated. The State also 
called Bill Wiley, who worked as the interim jail administrator while Appellant 
was incarcerated. Wiley testified that Appellant volunteered to work as a trusty 
when he was in jail and did the following type of work: “working the floors, 
working the hallway, fixing mop buckets for inmates, sweeping and mopping.” 
Wiley agreed that after Appellant reported pain to a doctor, he did not continue 
working as a trusty. Appellant asked Wiley, “And that was because he 
couldn’t do the work, right?” Wiley responded, “I suppose that would be 
true.”
        After 
carefully reviewing the entire record, we cannot say that the evidence tending 
to show that Appellant could not provide support for his children is of such 
great weight and preponderance that the jury’s failure to find that Appellant 
could not provide child support for his children is manifestly unjust.[50] We therefore hold that the evidence is factually 
sufficient to support the jury’s rejection of Appellant’s affirmative 
defense. Accordingly, we overrule Appellant’s second point.
V. CONCLUSION
        Having 
overruled both of Appellant’s points, we affirm the trial court’s judgment.
    
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
 
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and GARDNER, JJ.
 
PUBLISH
 
DELIVERED: August 19, 2004


NOTES
1. See Tex. Penal Code Ann. § 25.05 (Vernon 
2003).
2.  The jury implicitly rejected 
Appellant’s affirmative defense that he could not provide support for his 
children and found him guilty of criminal nonsupport as alleged in the 
indictment. See id. § 25.05(b).
3.  See id. § 25.05(a); Williams 
v. State, 114 S.W.3d 920, 920 & n.1 (Tex. Crim. App. 2003).
4.  Tex. Penal Code Ann. § 25.05(b); see 
also 6 Michael B. Charlton, Texas Practice Series: Texas Criminal Law § 
14.5 (2d ed. 2001) (describing history of section 25.05(b)’s enactment).
5.  TEX. 
PENAL CODE 
ANN. § 2.04(d) (Vernon 2003).
6.  The only other case Appellant 
cites is Ward v. State, 48 S.W.3d 383, 391 (Tex. App.—Waco 2001, pet. 
ref’d), in which the court held that the evidence was factually insufficient 
to support the jury’s verdict.
7.  See Jackson, 443 
U.S. at 319, 99 S. Ct. at 2789 (governing legal sufficiency); Zuniga v. State, 
No. 539-02, 2004 WL 840786, at *4-7 (Tex. Crim. App. Apr. 21, 2004) (discussing 
the evolution of factual sufficiency review; analyzing Johnson v. State, 
23 S.W.3d 1, 7 (Tex. Crim. App. 2000) and Clewis, 922 S.W.2d at 129, 
134)); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001) 
(concerning legal sufficiency); Griffin, 614 S.W.2d at 158-59 (same).
8.  See TEX. PENAL CODE ANN. 
§§ 2.04(d), 25.05(b).
9.  See, e.g., Patterson 
v. State, 121 S.W.3d 22, 24 (Tex. App.—Houston [1st Dist.] 
2003, pet. dism’d, untimely filed) (citing Naasz v. State, 974 S.W.2d 
418, 421 (Tex. App.—Dallas 1998, pet. ref’d) and concluding that court of 
appeals lacked legal sufficiency review jurisdiction of affirmative defense on 
which defendant bore burden of proof); Nolan v. State, 102 S.W.3d 231, 
237-38 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d) 
(addressing legal sufficiency issue); Torres v. State, 976 S.W.2d 345, 
347 (Tex. App.—Corpus Christi 1998, no pet.) (addressing legal sufficiency); Moranza 
v. State, 913 S.W.2d 718, 723 (Tex. App.—Waco 1995, pet. ref’d) 
(addressing legal sufficiency for sake of argument); Cover v. State, 913 
S.W.2d 611, 619 (Tex. App.—Tyler 1995, pet. ref’d) (addressing legal 
sufficiency); Cooney v. State, 803 S.W.2d 422, 425 (Tex. App.—El Paso 
1991, pet. ref’d) (addressing legal sufficiency); see also Roybal v. 
State, No. 04-02-00647-CR, 2003 WL 22241629, at *1-2 (Tex. App.—San 
Antonio Oct. 1, 2003, no pet.) (mem. op.) (not designated for publication) 
(addressing legal sufficiency); Gonzalez v. State, No. 2-02-291-CR, 2003 
WL 21101520, at *2 (Tex. App.—Fort Worth Jun. 23, 2003, pet. ref’d) (mem. 
op.) (not designated for publication) (addressing legal sufficiency); Centell 
v. State, Nos. 07-98-0344-CR & 07-98-0345-CR, 2000 WL 96246, at *4 (Tex. 
App.—Amarillo Jan. 28, 2000, pet. ref’d) (not designated for publication) 
(addressing legal sufficiency for sake of argument); Brena v. State, No. 
07-97-0429-CR, 1999 WL 606681, at *2 (Tex. App.—Amarillo Aug. 11, 1999, pet. 
ref’d) (not designated for publication) (addressing legal sufficiency).
10.  See generally Moranza, 
913 S.W.2d at 721-724 (recounting the evolution of legal and factual sufficiency 
review in Texas).
11.  Van Guilder, 709 
S.W.2d 178, 179 (Tex. Crim. App. 1985), overruled by Meraz v. State,785 
S.W.2d 146, 155 (Tex. Crim. App. 1990).
12.  709 S.W.2d at 181 (emphasis 
supplied); see Moranza, S.W.2d at 722 (recognizing Van Guilder’s “quasi-Jackson 
standard”).
13.  785 S.W.2d at 155.
14.  Zuniga, 2004 WL 
840786, at *4.
15.  785 S.W.2d at 152, 154.
16.  Zuniga, 2004 WL 
840786, at *4 (citing Meraz, 785 S.W.2d at 155).
17.  See generally 43 George E. Dix & Robert O. Dawson, Texas Practice Series: Criminal Practice & 
Procedure § 31.116 (2d ed. 2001) (discussing whether Meraz 
overruled Van Guilder in toto).
18.  785 S.W.2d at 155.
19.  121 S.W.3d at 24.
20.  See Nolan, 102 S.W.3d 
at 237-38; Torres, 976 S.W.2d at 347; Moranza, 913 S.W.2d at 723; Cover, 
913 S.W.2d at 619; Cooney, 803 S.W.2d at 425; see also Roybal, 
2003 WL 22241629, at *1-2; Gonzalez, 2003 WL 21101520, at *2; Centell, 
2000 WL 96246, at *4; Brena, 1999 WL 606681, at *2.
21.  See Tex. Const. art. V, §§ 5(b) (“The 
appeal of all cases in which the death penalty has been assessed shall be to the 
Court of Criminal Appeals. The appeal of all other criminal cases shall be to 
the Courts of Appeal as prescribed by law.”), 6(a) (“Said Court of Appeals 
shall have appellate jurisdiction co-extensive with the limits of their 
respective districts . . . under such restrictions and regulations as may be 
prescribed by law. . . . Said courts shall have such other jurisdiction, 
original and appellate, as may be prescribed by law. ”); Tex. Code Crim. Proc. Ann. art. 4.03 
(Vernon Supp. 2004) (“The Courts of Appeals shall have appellate jurisdiction 
coextensive with the limits of their respective districts in all criminal cases 
except those in which the death penalty has been assessed.”); see also 
7A Michael J. McCormick et al., Texas 
Practice Series: Criminal Forms & Trial Manual § 95.01 (10th 
ed. 1995) (discussing legislation authorizing intermediate appellate 
jurisdiction of criminal cases).
22.  2004 WL 840786, at *7.
23.  Id. (agreeing with the 
Supreme Court of Texas’s linking of clear and convincing evidence burden of 
proof in termination proceedings to altered appellate standard of factual 
sufficiency review in In re C.H., 89 S.W.3d 17, 25 (Tex. 2002)); see 
also In re J.F.C., 96 S.W.3d 256, 265 (Tex. 2002) (holding that clear 
and convincing evidence burden of proof in termination cases alters the 
appellate standard of legal sufficiency review).
24.  443 U.S. at 319, 99 S. Ct. at 
2789.
25.  U.S. Const. Amend. XIV; Jackson, 443 
U.S. at 318-19, 99 S. Ct. at 2788-89 (citing In re Winship, 397 U.S. 358, 
364, 90 S. Ct. 1068, 1072-73 (1970)).
26.  Jackson, 443 U.S. at 
318-19, 99 S. Ct. at 2788-89.
27.  See Jackson, 443 
U.S. at 318-19, 99 S. Ct. at 2788-89; Zuniga, 2004 WL 840786, at *7.
28.  785 S.W.2d at 152.
29.  TEX. PENAL CODE ANN. § 
2.04(d).
30.  785 S.W.2d at 154-55.
31.  See Zuniga, 
2004 WL 840786, at *7; Meraz, 785 S.W.2d at 154-55.
32.  See Sterner v. 
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).
33.  Victoria Bank & Trust 
Co. v. Brady, 811 S.W.2d 931, 940 (Tex. 1991).
34.  Id.; Sterner, 
767 S.W.2d at 690.
35.  767 S.W.2d at 690.
36.  See Nolan, 102 S.W.3d 
at 237-38; Moranza, 913 S.W.2d at 723; Cover, 913 S.W.2d at 619; see 
also Centell, 2000 WL 96246, at *4; Brena, 1999 WL 606681, at *2.
37.  803 S.W.2d at 425.
38.  See id.
39.  2003 WL 21101520, at *2 & 
n.5; see also Torres, 976 S.W.2d at 347 (citing Moranza, Cover, 
and Cooney and relying on Cooney’s standard); Roybal, 
2003 WL 22241629, at *1-2 (applying modified-Jackson standard).
40. Meraz, 785 S.W.2d at 152.
41.  See 2003 WL 21101520, 
at *2.
42.  While we recognize that Gonzalez 
concerns the defensive issue of entrapment, our limited holding in this case 
does not address the propriety of Gonzalez’s characterization of 
entrapment as an affirmative defense. Compare Tex. Penal Code Ann. § 8.06 (stating 
that entrapment is a “defense”), Flores v. State, 84 S.W.3d 675, 
680-81 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) 
(analyzing entrapment legal sufficiency issue), and Barnes v. State, 
70 S.W.3d 294, 304-05 (Tex. App.—Fort Worth 2002, pet. ref’d) (discussing 
“defense of entrapment”), with Gonzalez, 2003 WL 21101520, at 
*2 (characterizing entrapment as an affirmative defense), and Marlow 
v. State, 730 S.W.2d 845, 847 (Tex. App.—Fort Worth 1987, pet. ref’d) 
(stating that “[e]ntrapment, by its nature, is an affirmative defense”).
43.  785 S.W.2d at 155.
44.  See id. at 154.
45.  Id. at 154 n.2; see 
Zuniga, 2004 WL 840786, at *4.
46.  See Tex. Penal Code Ann. § 25.05(b); 
Sterner, 767 S.W.2d at 690.
47.  We observe that Appellant did 
not object to the introduction of his conviction, and he stated, “No 
objection” after the State offered the record of his conviction. The State 
questioned Ramirez about Appellant’s conviction and then offered Appellant’s 
penitentiary packet, at which time Appellant objected under rules of evidence 
403 and 404. The trial court overruled Appellant’s objection, and the State 
proceeded to question Ramirez about Appellant’s prior conviction and sentence, 
which was probated and then later revoked upon Appellant’s conviction for 
involuntary manslaughter. Appellant, however, does not complain on appeal about 
the admission of evidence pertaining to his prior criminal non-support 
conviction.
48.  See Sterner, 767 
S.W.2d at 690; Moranza, 913 S.W.2d at 723; Cover, 913 S.W.2d at 
619.
49.  See Meraz, 785 S.W.2d 
at 155.
50.  See id.