MARY'S OPINION HEADING 







                                                                                    NO. 12-04-00150-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
JIMMIE RAY SUTTON,                                    §                APPEAL FROM THE 294TH
APPELLANT
 
V.                                                                         §                JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                         §                VAN ZANDT COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Jimmie Ray Sutton appeals his conviction for murder. In four issues, Appellant
challenges the legal and factual sufficiency of the evidence, the jury instructions, and the length of
his sentence. We affirm.
 
Background
            Eric Sestrom attended the Piney Woods Biker Blowout in Canton, Texas on April 27, 2003
with his common law wife, Shannon Davis. Eric and Shannon attended the rally as trailer vendors. 
Appellant was working as staff for the event and wore a T-shirt with the word “security” on the front
of it. During a confrontation with Eric, Appellant cut Eric’s throat with a knife, causing his death.
Appellant was charged with murder. See Tex. Pen. Code Ann. § 19.02(b)(1), (2) (Vernon 2003).
            At trial, Shannon testified that when she and Eric signed into the rally, they were given green
armbands to show they were vendors. Prior to the confrontation between Eric and Appellant, she and
Eric worked at their booth, looked at other booths, ate, drank beer, and listened to a band. Eric also
took some hits off a marijuana cigarette and was taking Zoloft, an antidepressant. Shannon consumed
three beers, and Eric had about five beers during the day. Shannon stated that Eric was not
intoxicated, passed out, or “ugly fighting drunk.” According to Shannon, Eric helped the band pack
up after they finished playing, which was close to midnight. While Eric was doing that, Appellant
came up to Eric and Shannon and told them to leave, stating that vendors were not allowed at “these
activities.” Eric replied that they had “every right to be there,” and they began “yelling about it.” 
Another man came up and told Eric and Shannon they had to do as Appellant said. Shannon grabbed
Eric’s left hand and told him they needed to leave. She testified that they turned to leave, but once
she was ten to fifteen feet away, she noticed Eric was not with her. She looked back and saw him
with blood on the right side of his face. She saw a man on top of Eric and Appellant “sitting in a
chair watching Eric die.” 
            John Rector testified that shortly before midnight, near the stage for the wet T-shirt contest,
he observed an altercation. Rector described the persons involved and said he knew one of them to
be Appellant. He described the argument between the two men as “fairly heated.” When he and
others advised Eric to leave, Eric appeared to comply, but Appellant pursued him. After tapping Eric
on the shoulder, Appellant put a buck style knife to Eric’s throat and then back down. Rector saw
Appellant draw back “rather dramatically” and believed Eric had pushed him away. Next, Rector saw
Appellant lunge at Eric while bringing the knife up with his right hand, cutting Eric. He testified that
Appellant was off balance after cutting Eric and fell to the ground.
            Connie Mack Cook testified that he was present at the rally working crowd control. He knew
Appellant from a meeting the day before the rally. Cook testified that he knew Appellant was
working as staff and heard him “holler” for help. He overheard Appellant and Eric arguing about the
armband. Cook and others tried to break up the argument, and Eric walked away, causing Cook to
believe the argument was over. He then heard someone say “he hit Jimmie” and turned around in
time to see Eric hit Appellant with a closed fist. Cook then returned to the area where they were
because he thought Eric was about to pick up a chair and hit Appellant in the head. Cook grabbed
Eric and then realized that Appellant had slit Eric’s throat. He saw a knife in a pool of Eric’s blood.
            Michael Griffin testified that Eric was on his way out of the crowd when he observed
Appellant “drill” Eric, but he did not hear what Appellant said. The only contact he saw between the
two was when Eric pushed Appellant, but “it wasn’t like a forceful ‘I am going to do damage to you’”
type push. It was just “hey, back off, I’m leaving.” He did not see any more of the fight except “two
dog piles.” Lee Stewart testified that he saw the argument and that it seemed Eric was trying to get
away from the scene. He observed “chest butting” and saw a fist thrown by someone he thought to
be Eric. He then heard Appellant say, “I’m going to hurt you. I’m going to lay you open.” 
            Barbara Yetterman testified that she noticed an argument about three yards to her right. She
saw Eric and a girl walk away, leaving the event, when she heard Appellant say “I’m going to cut
you” and saw him shove Eric. Eric then shoved Appellant, and Appellant threw what she thought
was a punch at Eric. At that time, she realized Eric had been cut. James Yetterman, Barbara’s
husband, testified that he saw Eric walking toward him with Appellant behind him. He said that
Appellant made the first move. Eric then landed a punch on Appellant’s nose. Lisa Moen knew
Appellant and testified that he appeared intoxicated to her. She saw the argument and called Connie
Mack Cook to come over because she thought there was going to be trouble. She saw Appellant put
his hands on Eric’s chest and push him back. In response, Eric hit Appellant in the nose. Lisa then
saw a knife in Appellant’s hand and saw him cut Eric’s throat.



            Dr. David Dolinak, the Dallas County Deputy Chief Medical Examiner, testified about the
autopsy performed on Eric. He also stated that a person can have a debilitating or preexisting
condition that makes him susceptible to head injuries. He agreed that, depending on other factors,
having a prior craniotomy could also render a person more susceptible to head injuries. Larry Sutton,
Appellant’s brother, testified about Appellant’s medical history. He stated that Appellant had been
hospitalized at least four times for surgery on his head between November 2002 and March 2003. 
The first procedure, a craniotomy, required the removal of his skull cap and the repair of several holes
in his skull that allowed sinus fluid to seep into his cranial cavity. That procedure was performed at
a time when Appellant was hospitalized for meningitis. Each of the other three procedures were to
repair his sinuses and involved drilling a hole in his head. 
            At the close of the evidence, the defense moved for a charge on criminally negligent
homicide. The trial court denied the request. However, the defense received a charge on self
defense, and the court included a sudden passion instruction. The jury found Appellant guilty of
murder and sentenced him to imprisonment for forty years. This appeal followed.
 
Legal Sufficiency of the Evidence
            In his first issue, Appellant contends the evidence is legally insufficient to support his
conviction. Specifically, he contends that he introduced sufficient evidence to establish that he acted
in self defense when he killed Eric.
Standard of Review 
            In reviewing the legal sufficiency of the evidence to support a verdict, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). Where defensive evidence is presented, we determine whether, after viewing all
the evidence in the light most favorable to the prosecution, any rational trier of fact would have found
the essential elements of murder beyond a reasonable doubt and also have found against the appellant
on the defensive issue beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim.
App. 1991). 
Burden of Proof
            In this case, to support a conviction for murder as charged in the indictment, the State had the
burden to show that Appellant intentionally and knowingly caused Eric’s death or, alternatively, that
Appellant, intending to cause serious bodily injury to Eric, committed an act clearly dangerous to
human life (cutting Eric with a knife) that caused Eric’s death. See Tex. Pen. Code Ann.
§ 19.02(b)(1), (2). 
            A person is justified in using force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself against the other’s use or attempted use
of unlawful force. Id. § 9.31(a). However, the use of force is not justified if the actor provoked the
other’s use or attempted use of unlawful force except under circumstances not pertinent here. See
id. § 9.31(b)(4). A person is justified in using deadly force against another (1) if he would be
justified in using force under Section 9.31; (2) if a reasonable person in the actor’s situation would
not have retreated; and (3) when and to the degree he reasonably believes the deadly force is
immediately necessary to protect himself against the other’s use or attempted use of unlawful deadly
force. Id. § 9.32(a). Appellant had the burden to produce evidence raising self defense, and the State
had the burden of persuasion in disproving Appellant’s claim of self defense. Saxton, 804 S.W.2d
at 913. The State’s burden is not a burden of production, but rather a burden requiring the State to
prove its case beyond a reasonable doubt. Id. 
Analysis
            Appellant does not deny cutting Eric’s throat with a knife and causing his death. Instead, he
points out that he had four skull surgeries between November 2002 and March 2003, which
reasonably led him to believe on the date of his confrontation with Eric (April 27, 2003 ) that a blow
or blows to his head might be fatal to him. Therefore, he urges, he acted in self defense during the
confrontation, using only the amount of force he perceived reasonably necessary to save his own life.
Viewed in the light most favorable to the verdict, the evidence shows that Eric and Shannon were in
the area where a band had been playing, and Appellant told them to leave. An argument ensued
between Eric and Appellant, and they began yelling and shoving each other. Shannon and other
observers encouraged Eric to leave. Eric walked away, but Appellant followed him, stopped him,
and held a knife to his throat. Eric hit Appellant and shoved him away. Appellant then sliced Eric’s
throat, causing his death.
            Based upon this evidence, we conclude that a rational trier of fact could have found all the
essential elements of murder beyond a reasonable doubt. We further conclude that, from this
evidence, a rational trier of fact could have found against Appellant on the self defense issue. We
overrule Appellant’s first issue.

Factual Sufficiency of the Evidence
            In his second issue, Appellant contends the evidence is factually insufficient to support his
conviction. 
Standard of Review
            When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). Here, Appellant challenges the factual sufficiency of the evidence to support the jury’s
rejection of his defense. Consequently, we must review all of the evidence in a neutral light and ask
whether the State’s evidence taken alone is too weak to support the finding and whether the proof of
guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. 
Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). In conducting our review, we must
discuss the most important evidence that Appellant claims undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
Analysis
            Appellant argues that he had no choice but to take Eric’s life, contending that he “could either
defend himself or have his vulnerable skull beaten in by a drunk, stoned attacker.” He further argues
that the verdict is irrational and supported by, at best, a mere modicum of evidence. 
            To support his claim of self defense, Appellant introduced testimony at trial regarding his four
skull surgeries between November 2002 and March 2003. He also introduced his medical records
documenting the surgeries as well as his hospitalization for bacterial meningitis in November 2002. 
On cross examination, Dr. David Dolinak testified that a person can have a debilitating or preexisting
condition that makes him susceptible to head injuries. He also testified that, depending on other
factors, having a prior craniotomy could render a person more susceptible to head injuries. Appellant
relies on this evidence to show that his fear for his life was reasonable. However, Appellant’s
argument misses the mark.
            To successfully assert the use of deadly force as self defense, one must first show that he was
justified in using force. Tex. Pen. Code Ann. § 9.32(a)(1). Although Appellant contends in his brief
that “the situation was of [Eric’s] making [because he] spun around and instigated the fight” and that
Eric “was in the process of killing Appellant,” the record does not support these statements. The
testimony at trial showed that Appellant followed Eric as he walked away from their initial
confrontation, tapped him on the shoulder, and held a knife to his throat when he turned around. In
response, Eric hit Appellant in the nose and shoved him. Appellant then cut Eric’s throat. This
evidence supports a finding that Appellant, not Eric, was the aggressor. The use of force is not
justified by one who provokes another’s use or attempted use of unlawful force unless the person
abandoned or attempted to abandon the encounter and the other person nevertheless continued or
attempted to use unlawful force against the actor. See id. § 9.31(b)(4). Moreover, the record shows
that Eric discontinued his use of force once he hit Appellant and shoved him away. Therefore, even
if Appellant had been entitled to use force against Eric, he has not shown that Eric would have hit
him again absent further provocation. Finally, despite Appellant’s claim that he feared for his life
because of his vulnerable skull, he held a knife to Eric’s throat. This act was almost certain to
provoke the use of force in defense. Provoking the use of force in another is inconsistent with
Appellant’s alleged concern about his vulnerability to head injuries.
            Self defense is an issue of fact for the jury. Saxton, 804 S.W.2d at 914. In deciding the issue,
the jury is free to accept or reject the defensive evidence. Id. A jury verdict of guilty is an implicit
finding rejecting a defendant’s self defense theory. Id. In viewing the evidence, both for and against
the verdict, we cannot say that the State’s evidence taken alone is too weak to support the finding nor
can we say that the proof of guilt, although adequate if taken alone, is against the great weight and
preponderance of the evidence. See id. We hold that the evidence is factually sufficient to support
the jury’s verdict and its implied rejection of Appellant’s self defense theory. Appellant’s second
issue is overruled.
 
Jury Charge Error
            In his third issue, Appellant asserts that the trial court erred when it denied his requested jury
charge on the lesser included offense of criminally negligent homicide. Appellant asserts that the jury
reasonably could have concluded he failed to understand that swinging at a man with an open knife
in his hand was too dangerous an act for a reasonable person to undertake. In other words, Appellant
contends that the jury reasonably could have concluded he did not understand the risk. The State
argues that there is no evidence in this case supporting a jury charge on criminally negligent
homicide. 
Applicable Law
            A jury instruction on a lesser included offense is required only if the lesser offense is included
within the proof necessary to establish the offense charged and some evidence exists in the record
that if the defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State, 855 S.W.2d
666, 672 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence is sufficient to entitle
a defendant to a lesser charge. Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). The State
acknowledges that criminally negligent homicide is a lesser included offense of murder. Appellant
argues that because the trial court instructed the jury on manslaughter, another lesser included offense
of murder, it was required to instruct on criminally negligent homicide. In determining whether there
is evidence in the record from which a jury could rationally acquit Appellant of murder while
convicting him of criminally negligent homicide, it is helpful to compare the culpable mental states
required to establish manslaughter and criminally negligent homicide.
Manslaughter and Criminally Negligent Homicide
            A person commits manslaughter who recklessly causes the death of another individual. Tex.
Pen. Code Ann. § 19.04(a) (Vernon 2003). A person is reckless when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances surrounding his conduct exist
or the result will occur. Id. § 6.03(c). Criminally negligent homicide involves causing the death of
another by criminal negligence. Id. § 19.05(a). A person is criminally negligent when he ought to
be aware of a substantial and unjustifiable risk that the circumstances surrounding his conduct exist
or the result will occur. Id. § 6.03(d). Criminal negligence is a lesser culpable mental state than
reckless. Conroy v. State, 843 S.W.2d 67, 71 (Tex. App.–Houston [1st Dist.] 1992, pet. ref’d). 
            Criminal negligence involves inattentive risk creation; the actor ought to be aware of the risk
surrounding his conduct or the results thereof. Lugo v. State, 667 S.W.2d 144, 148 (Tex. Crim. App.
1984). Reckless conduct involves conscious risk creation; that is, the actor is aware of the risk
surrounding his conduct or the results thereof, but consciously disregards that risk. Id. At the heart
of reckless conduct is conscious disregard of the risk created by the actor’s conduct; the key to
criminal negligence is found in the failure of the actor to perceive the risk. Id. Before a charge on
criminally negligent homicide is required, the record must contain evidence showing an unawareness
of the risk. Mendieta v. State, 706 S.W.2d 651, 652 (Tex. Crim. App. 1986).
            Here, John Rector testified that Appellant lunged at Eric while bringing a knife up in his right
hand, cutting Eric’s throat. The record also includes other testimony that Appellant held a knife to
Eric’s throat, Eric pushed Appellant away and hit him, Appellant then made a swinging motion
toward Eric’s throat while holding the knife, and the knife cut Eric. The record is devoid of any
evidence that Appellant was unaware of the risk that Eric would die as a result of Appellant’s
conduct. Indeed, the record includes testimony that Appellant displayed his knife earlier at the rally.
At that time, he demonstrated the sharpness of the knife by slicing through a piece of paper and
commented that he either could or would cut somebody that night. Additionally, after Eric hit
Appellant, Lee Stewart heard Appellant say, “I’m going to hurt you. I’m going to lay you open.” This
testimony at least supports an inference that Appellant was aware of the risk he was creating.
            Based upon our review of the record, we conclude that nothing in the evidence presented
indicates that Appellant was unaware of the risk. Accordingly, we hold that the trial court did not
err in denying Appellant’s request to instruct the jury on the lesser offense of criminally negligent
homicide. Appellant’s third issue is overruled.
 
Sudden Passion
            In his fourth issue, Appellant argues that the evidence adduced at trial is both legally and
factually insufficient to support the jury’s finding that the offense was not committed under the
immediate influence of sudden passion arising from an adequate cause. 
Standard of Review
            The proper standard in a criminal case for review of a legal sufficiency challenge to a jury’s
negative finding on an issue that the appellant had to prove is the same standard applied in civil cases. 
See Cover v. State, 913 S.W.2d 611, 619 (Tex. App.–Tyler 1995, pet. ref’d) (citing Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)). We first examine the record for evidence that
supports the finding while ignoring all evidence to the contrary. Cover, 913 S.W.2d at 619. If no
evidence supports the negative finding, we must then examine the entire record to determine whether
it establishes the contrary proposition as a matter of law. Id. 
            Where an appellant challenges the factual sufficiency of the evidence to support a jury’s
negative finding on an issue that he had to prove by a preponderance of the evidence, the standard
is whether, after considering all the issue relevant to the issue at hand, the verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust. Meraz v. State, 785
S.W.2d 146, 155 (Tex. 1990). 
Legal Sufficiency
            “Sudden passion” is “passion directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which passion arises at the time of the
offense and is not solely the result of former provocation.” Tex. Pen Code Ann. § 19.02(a)(2)
(Vernon 2003). “Adequate cause” means “cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of
cool reflection.” Id. § 19.02(a)(1). If, at the punishment phase of the trial, a defendant proves by a
preponderance of the evidence that he caused the death as a result of sudden passion, the offense is
a second degree felony. Id. § 19.02(d).
            Although Appellant did not testify during the guilt/innocence phase of the trial, he testified
during the punishment phase. State’s Exhibit 12 was admitted into evidence, which is a statement
Appellant made after his arrest. In State’s Exhibit 12, Appellant said, “He shouldn’t have hit me. 
I drew my knife in self defense.” In his courtroom testimony, Appellant admitted to being shocked
when Eric hit him in the head using a “sucker punch.” Yet, Appellant testified that he was conscious
of the moment in time when he drew his knife and opened the blade, which was after Eric’s sucker
punch. This evidence shows a mind capable of cool reflection and able to prepare for an armed
attack against a man who appeared to be unarmed. There was also testimony that after Appellant cut
Eric’s throat, he calmly waited for the authorities to arrive at the scene.
            In this case, the jury heard from a number of witnesses who were present at the crime scene. 
The testimony described an argument that escalated into a fight between two men who had no
previous association. Ignoring all evidence contrary to the jury’s negative finding on the sudden
passion issue, we conclude that the record contains evidence that Appellant did not kill Eric out of
sudden passion arising from an adequate cause. We hold that the evidence is legally sufficient to
support the jury’s negative finding. 
Factual Sufficiency
            In his factual sufficiency challenge, Appellant argues the evidence is overwhelming that he
cut Eric with a knife only because he thought Eric was in the process of beating him to death. He
also states that Eric’s abrupt turn and sucker punch to his head gave rise to sudden passion on the part
of Appellant. In summary, Appellant argues that trying to save his own life is certainly adequate
cause. We disagree with Appellant’s view of the evidence.
            We have previously observed that the record shows Eric discontinued his use of force once
he hit Appellant and shoved him away. Appellant has not called our attention to any portion of the
record to support his assertion that Eric would have hit him again absent further provocation.
Moreover, the only statement Appellant made indicating that he feared Eric was the following
response in answer to a question from his attorney during his direct examination:
 
              Q:          Now, let me get back to the April 27 fight, and I’ve asked the question, did you have
a concern for your health when you were being struck?
 
              A:          I thought I was . . . I . . . it happened so fast, I thought that . . . I didn’t know what
he had on his person, I thought I was fixing to die.
 
 
This answer supports an inference that Appellant thought Eric might have a weapon and, therefore,
he feared for his life. No other witnesses made such an observation, and none testified that the blow
by Eric was life threatening. Appellant did not include this indication of fear in his statements to law
enforcement. Even if Appellant was anxious about his medical condition, the evidence shows that
he was calm, deliberate, and calculating in his use of the knife.  
            In State’s Exhibit 13, Appellant related that Eric hit him first in the jaw and then in the nose. 
He stated that “when he hit me in my nose, I lost it.” This supports an inference that Appellant was
angry or upset at the time he killed Eric. However, after viewing all of the evidence relevant to the
issue of sudden passion, we hold that the evidence supporting the jury’s negative finding on sudden
passion is not so against the great weight and preponderance of the evidence that the verdict is clearly
wrong and manifestly unjust. See Zuniga, 144 S.W.3d at 481. Appellant’s fourth issue is overruled.
 
Conclusion
            Having overruled Appellant’s four issues, we affirm the judgment of the trial court.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered January 31, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
(DO NOT PUBLISH)