NO.
12–05-00146-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DANIEL LATHAM,  §                      APPEAL
FROM THE FOURTH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      RUSK
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Daniel Latham
appeals his conviction for murder.  In
eight issues, Appellant contends that the trial court should have granted his
motion for a new trial, that the evidence was insufficient to support either
the jury’s implicit decision that he did not act in self defense or the jury’s
explicit rejection of his “sudden passion” defense, and that the trial court
erroneously instructed the jury.  We
affirm.

 

Background

            Appellant and his fiance were living
in various homeless shelters and on the streets of Longview, Texas at the
beginning of 2004.  They had lived with
his family at various times, but had been unable to secure permanent
housing.  Appellant met Dean Suggs one
day while he was outside a shelter smoking a cigarette.  Suggs offered to give him some money and a
place to stay while he got on his feet. 
Apparently these kinds of offers were not without precedent, and
Appellant or his fiance had stayed with at least one other person under similar
circumstances.  

            Two days later, Appellant and his
fiance accepted the offer and went with Suggs to his house.  That afternoon, Suggs left the two at his
home while he went to his job at a restaurant in Kilgore, Texas.  At the end of his shift, he brought Appellant
to the restaurant where he was interviewed for a job.  Appellant gave another’s name as his own
during the interview.

            The next morning, the three awoke
and ate breakfast.  Appellant’s fiance
took ill, and Suggs suggested that she sit outside in the fresh air.  Appellant’s fiance went outside and,
according to Appellant, Suggs attempted to forcibly sexually assault him.  Appellant took a hammer from a nearby table
and struck Suggs with it.  Appellant told
the authorities that he hit Suggs three times, including once while Suggs was on
the ground, and that Suggs was still alive when Appellant left.       The
medical examiner testified she was able to identify nine individual strikes
from the hammer to the victim’s head and more blows to the body.  Such a precise assessment was possible because
the face of the hammer had a distinctive finish, and the strikes transferred
that pattern to the victim’s body.  The
strikes were heavy.  They shattered the
victim’s skull and broke his jaw and ribs. 
The medical examiner was unable to identify which strike killed the
victim or to determine how long it took for death to come.  

            Appellant took the victim’s keys and
wallet and left the home with his fiance in Suggs’s car.  They went back to the shelter and picked up
two friends.  After a stop to purchase
marihuana, they went to the Sears retail store where Appellant’s father
worked.  Appellant told his father he was
going to Florida and borrowed twenty dollars from him. 

            Appellant made his way to a shelter
in St. Augustine, Florida.  The police
were called to the shelter on an unrelated matter and determined that Appellant
was driving the victim’s car.  The police
in Texas had put out an alert for the vehicle, and Appellant was arrested and
extradited back to Texas.

            A Rusk County grand jury indicted Appellant
for the offense of murder.  Appellant
pleaded not guilty and argued at trial that he had acted in self defense.  The jury rejected the self defense argument
and found him guilty of murder.  In the
punishment phase of the trial, Appellant raised the affirmative defense of “sudden
passion.”  The jury rejected that defense
and assessed punishment at fifty-five years of imprisonment.

        After receipt of the verdict, the court
inquired of the jurors about their use of cellular telephones.  Several jurors said that they had used their
phones to inform relatives about their anticipated schedule.  Appellant filed a motion for a new trial
alleging that the use of the cellular telephones was juror misconduct and that
jurors had discussed the impact of parole on the amount of time he would serve
in prison.  The trial court conducted a
hearing and received the juror’s cellular phone records.  The trial court denied the motion for a new
trial.  This appeal followed.

 

Motion for New
Trial

            In his first three issues, Appellant
complains that the trial court should have granted his motion for new trial
because the jury engaged in misconduct by communicating with others during
deliberations, by returning a quotient verdict on punishment, and by
considering parole.  We will address
these complaints in turn.

Standard of
Review

            We review a trial court’s denial of
a motion for new trial for an abuse of discretion.  Charles v. State, 146 S.W.3d
204, 208 (Tex. Crim. App. 2004).  A trial
court may not make findings or summarize the evidence adduced at a hearing on a
motion for a new trial.  Tex. R. App. P. 21.8(b).  Therefore, we view the evidence in the light
most favorable to the trial court’s ruling and presume that any reasonable
factual findings were made against the losing party.  Charles, 146 S.W.3d at
206.  A trial court abuses its discretion
in denying a motion for new trial only when no reasonable view of the record
could support the trial court’s ruling.  Id.
at 208.

Juror
Communications

            The rules of appellate procedure
state that a trial court must grant a motion for a new trial if a juror has
talked with another person about the case after retiring to deliberate or has
engaged in corrupt conduct.  Tex. R. App. P. 21.3(d), (f); see
also Tex. Code Crim. Proc. Ann.
art. 36.22 (Vernon 2005).  The court of
criminal appeals has interpreted this provision to mean that injury to the
defendant is presumed if there is an unauthorized conversation about the case,
but that the State may rebut this presumption. 
Quinn v. State, 958 S.W.2d 395, 401 (Tex. Crim. App.
1997).  

            In this case, it is not clear that
any juror talked to another person about the case after retiring to
deliberate.  Several jurors called family
members to indicate that they would not be home for the evening meal.  Several others called family members to
discuss arrangements for a ride, and one juror called his wife to have her
cancel an appointment he had for that evening. 
In Thompson v. State, Nos. 14-03-00273-CR, 14-03-00274-CR,
2004 Tex. App. LEXIS 6856, at *15-18 (Tex. App.–Houston [14th Dist.] 2004, pet.
ref’d) (not designated for publication), the court of appeals considered an
instance where a juror called his wife and told her to change their travel
plans for the following Monday because one of the jurors was holding out for a
sentence substantially lower than the others thought appropriate.  In that case, the court treated the matter as
a communication about the case, but found that it did not injure or prejudice
the accused.  Id., at
*17-18 (citing Stults v. State, 23 S.W.3d 198, 206 (Tex. App.–Houston
[14th Dist.] 2000, pet. ref’d); Ites v. State, 923 S.W.2d 675,
677-78 (Tex. App.–Houston [1st Dist.] 1996, pet. ref’d)).

            None of the communications in this
case rose even to the level of the communication in Thompson.  The trial court’s decision to deny the motion
for new trial on this issue is sustainable either on the grounds that there
were no communications about “the case” or on the grounds that there was no
injury or prejudice.  There was no
testimony that any juror discussed the case with an outside party.  In fact, every juror who was asked testified
that he or she did not discuss the case on the telephone.  There was no evidence that the jurors
discussed their conversations with their family members among themselves.  The telephone calls were of a routine nature,
alerting family members when to expect the jurors.  No deliberation information was passed out of
the jury room and, so far as the evidence shows, no information came into the
jury room. 

         In this case, there was no
communication about the case and no corrupt conduct. The trial court did not
abuse its discretion when it denied the motion for new trial with respect to
the allegation that there was communication about the case or corrupt conduct.
We overrule Appellant’s first issue.  

Quotient
Verdict

            Jurors may not reach their verdict
by lot or in any other manner that is not a fair expression of the jurors’
opinion.  Tex. R. App. P. 
21.3.  Appellant alleges that the
punishment was assessed by a “quotient verdict,” in violation of Rule
21.3.  Indeed, several jurors testified
that each juror wrote down an individual assessment of the appropriate sentence
at the outset of the deliberations and that the foreperson then tallied those
numbers in some way.[1] 
No one could describe the method used to aggregate those amounts, but
one juror testified that the outcome of the calculations was forty-four years.

            A “quotient verdict,” or the
averaging of the positions of individual jurors, is impermissible, but only if
the jurors agree in advance to be bound by the outcome of the averaging device.
 Martinez v. State, 496
S.W.2d 612, 613–14 (Tex. Crim. App. 1973). 
The court of criminal appeals has held that there is no error if the
jurors use such a device in the absence of an agreement to be bound by the
outcome.  Id.

            There is no evidence of any
agreement by the jurors to be bound by the averaging of their respective
positions on the appropriate punishment in this case.  In fact, several jurors testified that they
were not influenced by the arithmetic calculations done by the foreperson.  As it happens, the jury ultimately agreed
with a sentence proposed by the district attorney, fifty-five years.  This represented a substantial compromise
between one juror who initially thought community supervision was appropriate
and others who thought ninety-nine years was appropriate.  But the implicit conclusion by the trial
court that the verdict was a result of deliberation by the jury and not the
mechanical application of an arithmetic device is supported by the record.  We overrule Appellant’s second issue.

Discussion of
Parole

            As required by law, the trial court
instructed the jury that a defendant’s term of imprisonment could be reduced by
an award of parole or “good conduct time.” 
See Tex. Code Crim. Proc.
Ann. art. 37.07 § 4(a) (Vernon 2005). 
The jurors were further instructed that they could consider the
existence of the parole law and good conduct time but could not consider how
those mechanisms might affect Appellant. 
See id.

            A jury’s discussion of parole is
reversible error when a defendant shows there was (1) a misstatement of the
law, (2) asserted as a fact by one professing to know the law, and (3) the
misstatement was relied upon by other jurors, (4) who for that reason changed
their vote to a harsher punishment.  Salazar
v. State, 38 S.W.3d 141, 147 (Tex. Crim. App. 2001) (citing Sneed
v. State, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984)).

            In this case, there was some
suggestion that there might have been a misstatement of the law.  At least one juror testified that another
juror had said that convicted persons served one third of the assessed sentence.  But there is no suggestion that any juror
professed to know the law or that such an assertion was relied upon or was the
basis for any juror to vote for a longer sentence.  Instead, the evidence was clear that the
foreperson stopped conversation about parole, telling the jurors that they were
forbidden to discuss it.  

            The implicit trial court finding
that there was no juror misconduct with respect to discussion of parole law is
supported by the record and is not an abuse of its discretion.  We overrule Appellant’s third issue.

 

Sufficiency of the
Evidence–Rejection of Self Defense

            In
his fourth and fifth issues, Appellant argues that the evidence is insufficient
to sustain his conviction in light of his argument at trial that he acted in
self defense.

Standard of
Review

            In reviewing the legal sufficiency
of the evidence to support a verdict, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
When a defense is presented, we determine whether, after viewing all the
evidence in the light most favorable to the prosecution, any rational trier of
fact would have found the essential elements of the offense beyond a reasonable
doubt and also found against the Appellant on the defensive issue beyond a
reasonable doubt.  Saxton v. State,
804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

            When a defendant challenges the
factual sufficiency of the rejection of a defense, we review all of the
evidence in a neutral light and ask whether the State’s evidence taken alone is
too weak to support the finding and whether the proof of guilt, although
adequate if taken alone, is against the great weight and preponderance of the
evidence.  Zuliani v. State,
97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

Applicable Law

             As charged, a person commits the
offense of murder if, acting with the intent to cause serious bodily injury, he
commits an act clearly dangerous to human life that causes the death of an
individual.  Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon 2005).  A person may use deadly force against another
if he reasonably believes that deadly force is necessary to protect himself
against the other’s use or attempted use of unlawful force, if a reasonable
person in the actor’s situation would not have retreated, and if the use of
force is to the degree reasonably believed to be immediately necessary to
protect against an attack.  Tex. Pen. Code Ann. §§ 9.31(a), 9.32(a)
(Vernon 2005).  The defendant has the
initial burden of producing evidence to support a claim of self defense, but
the State retains the burden of persuasion on the issue.  See Zuliani, 97 S.W.3d at
594.  Because self defense is a complete
defense, a finding of guilt is an implied finding against the defensive
theory.  Id.  As the sole judge of the weight and
credibility of the testimony, the jury is free to believe or disbelieve the
testimony of any witness and to accept or reject any or all of the evidence
produced by the parties.  See Upton
v. State, 853 S.W.2d 548, 552 (Tex. Crim. App. 1993).

Analysis

            While his statements to the
authorities differed in some details, Appellant’s essential position was that
he was faced with a forcible sexual assault when he hit the victim with the
hammer.  The jury may have concluded that
his story was concocted or that Appellant used more force than was necessary to
protect himself.  

            The second proposition finds support
in Appellant’s own statements.  Appellant
said that he hit the victim while he was on the ground.  Additionally, Appellant’s statements did not
account for the number of strikes to the victim’s body.  Appellant said that he hit the victim three
times, but the medical examiner testified that there were nine strikes to the
victim’s head and others to his body.

            There is circumstantial evidence
that supports a rejection of the defense in its entirety.  Appellant did not alert the authorities, he
fled the state with the victim’s wallet and automobile, and  his fiance testified that Appellant appeared
calm when he exited the house.  Also,
Appellant apparently removed the telephone from the wall.  This activity is not consistent with a person
who is required by unfortunate circumstances to kill another human being.  On the other hand, as Appellant points out,
his statement that the use of force was in defense of his person is not
specifically contradicted by the evidence. 
While not bearing on the issue of the propensity to engage in a sexual
assault, the question of the victim’s sexual orientation was not resolved.  The defense suggested that he was a
homosexual and there were videotapes introduced into evidence that would
support that conclusion.  The prosecution
called several witnesses in rebuttal who testified that the victim was not a
homosexual.

            Viewing the evidence in a light most
favorable to the verdict, we conclude the jury could have rationally determined
that all of the elements of the offense were proven and could have found
against Appellant on the issue of self defense. 
Viewing the evidence in a neutral light, we further conclude that the
evidence is not too weak to sustain the verdict and that the jury verdict is
not against the great weight and preponderance of the evidence.

 

Sufficiency of the
Evidence–Sudden Passion

            In
his sixth and seventh issues, Appellant contends that the evidence is legally
and factually insufficient to support the jury’s rejection of his “sudden
passion” defense.

Applicable Law

            At the punishment stage of a trial,
a person convicted of murder may assert that he caused the death while under
the immediate influence of “sudden passion” arising from an adequate
cause.  Tex.
Pen. Code Ann. § 19.02(d) (Vernon 2005). 
“Sudden passion” means “passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.”  Id. §
19.02(a)(2). A cause is adequate if it “would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection.”  Id. § 19.02(a)(1).  If a defendant proves the issue in the
affirmative by a preponderance of the evidence, the offense is a felony of the
second degree.  Id. §
19.02(d).

Standard of
Review–Legal Sufficiency

            When reviewing the legal sufficiency
of a rejected affirmative defense, we first examine the record for evidence
that supports the finding while ignoring all evidence to the contrary.  Cover v. State, 913 S.W.2d 611,
619 (Tex. App.–Tyler 1995, pet. ref’d) (citing Sterner v. Marathon Oil
Co., 767 S.W.2d 686, 690 (Tex. 1989)); Cleveland v. State,
177 S.W.3d 374, 387–88 (Tex. App.–Houston [1st Dist.] 2005, pet. ref’d.); Ballard
v. State, 161 S.W.3d 269, 271–72 (Tex. App.–Texarkana 2005), aff’d
other grounds, 2006 Tex. Crim. App. LEXIS 1070 (Tex. Crim. App. June 7,
2006) (not yet released for publication). 
If no evidence supports the negative finding, we then examine the entire
record to determine if the contrary proposition is established as a matter of
law.  Cover, 913 S.W.2d at
619.

            When reviewing the factual
sufficiency of the evidence in light of a rejection of an affirmative defense,
we consider all of the evidence and determine whether the judgment is “so
against the great weight and preponderance of the evidence so as to be
manifestly unjust.”   Zuniga v.
State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004).  We review the evidence neutrally, but we do
not intrude on the fact finder’s role as the sole judge of the weight and
credibility given to any witness’s testimony. 
Johnson v. State, 23 S.W.3d 1, 7-8 (Tex. Crim. App. 2000).

Analysis

            As the court noted in Cleveland,
it would be an extraordinary case where “sudden passion” was established as a
matter of law.  See Cleveland,
177 S.W.3d at 389.  Indeed, the jury is
entitled to reject or disbelieve even uncontradicted testimony.  Id.  In this sense, this case is an ordinary
one.  Appellant told one of the
investigating officers that he had acted in a rage.  He testified that he was scared and
terrified.  This does not establish “sudden
passion” as a matter of law.  The jury
could have rationally concluded that Appellant was not telling the truth or
that his reaction was objectively unreasonable. 
We likewise hold that the jury’s determination was not manifestly unjust
or against the great weight and preponderance of the evidence.  While Appellant’s testimony may raise the
issue of “sudden passion,” the jury could have disbelieved his story or
concluded that the complained of attack was not the sort that would render a
person of ordinary temper incapable of cool reflection.  In fact, the evidence showed that Appellant
was capable of cool reflection immediately after the assault as he calmly
instructed his fiance to wait outside, pulled the telephone from the wall, and
collected the victim’s car keys, car, wallet, and hammer.  There is nothing in the law that requires the
period of a loss of cool reflection to have any particular duration, but
Appellant’s quick recovery of his planning abilities undercuts his
testimony.  Perhaps the best objective
evidence that Appellant was incapable of cool reflection is the same evidence
that may have undercut his self defense argument—the excessively brutal nature
of the murder.  As Appellant points out,
the two defenses are not mutually exclusive. 
See Medlock v. State, 591 S.W.2d 485, 487 (Tex.
Crim. App. 1979).  But the brutal nature
of the assault does not prove that Appellant acted with “sudden passion” or
that the provocation, if any, was the kind that would commonly cause this kind
of reaction from a person of ordinary temper. 


            The jury had the ability to observe
Appellant as he testified and was in the best position to assess his
credibility. The jury’s resolution of what conflicts there were in the evidence
was reasonable as was their rejection of the “sudden passion” defense. We
overrule Appellant’s sixth and seventh issues.

 

Jury Instruction

            In his eighth issue, Appellant
argues he is entitled to a new punishment hearing because the jury instructions
did not require a unanimous verdict on the issue of “sudden passion.”

Applicable Law

            The jury’s verdict on the “sudden
passion” issue must be unanimous.  Sanchez
v. State, 23 S.W.3d 30, 34 (Tex. Crim. App. 2000).  Appellant did not object to the jury charge,
and so we review the matter to determine if he suffered egregious harm.  Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1988).  In
making this determination, “the actual degree of harm must be assayed in light
of the entire jury charge, the state of the evidence, including the contested
issues and weight of probative evidence, the argument of counsel and any other
relevant information revealed by the record of the trial as a whole.”  Id.  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.  Id. at 174.  Egregious harm is a difficult standard to
meet and must be determined on a case by case basis.  Ellison v. State, 86 S.W.3d
226, 227 (Tex. Crim. App. 2002). 

Analysis

            The jury was asked the following
question:

 

Do you find by a preponderance of the evidence that on the occasion in
question, at the time of the commission of the offense for which defendant is
on trial, the Defendant, Daniel Latham, caused the death of DEAN SUGGS while
he, DANIEL LATHAM, was under the immediate influence of sudden passion arising
out of adequate cause?

 

 








            The jury answered “No” on the
verdict form they were given.  Appellant
cites Newton v. State, 168 S.W.3d 255 (Tex. App.–Austin 2005,
pet. ref’d), for the proposition that a jury charge that does not specifically
require a unanimous determination on the “sudden passion” question is
defective.  But Newton is
easily distinguished from the present case. 
In Newton, the verdict form did not require the jury to
unanimously find against the defense before they sentenced him as a first
degree felon.  Id. at
257-58.  Instead, the charge, to which
the defendant objected, allowed the jury to unanimously find that “sudden
passion” was established and sentence the defendant as a second degree felon or
to sentence him as a first degree felon without making a unanimous
determination on the “sudden passion” issue. 
Id.  The court of
criminal appeals has required that the verdict on “sudden passion” be unanimous
whether it is accepted or rejected, and the court in Newton found
error on that basis.  Id.
at 260; Sanchez, 23 S.W.3d at 32.

            The present case does not suffer
from that defect.  The jury was required
to answer the question about “sudden passion,” and they did so.  That portion of the charge does not recite
that the determination must be unanimous, but neither did it allow a less than
unanimous determination against Appellant’s position.  In Cartier v. State, 58 S.W.3d
756, 760 (Tex. App.–Amarillo 2001, pet. ref’d), the jury charge did not
specifically say that the finding on the matter of “sudden passion” was to be
unanimous, but it did state elsewhere that the verdict was to be
unanimous.  Id.  The court concluded that this sufficiently
directed the jury to make a unanimous determination of the “sudden passion”
issue.

            We find Cartier to be
persuasive on this issue.  The jury in
this case was instructed that their verdict must be unanimous and that they
were to have the foreperson sign her name to the form that conformed to their
verdict.  In the same paragraph they were
instructed to answer the special issue, the “sudden passion issue,” before
considering the sentence.  Additionally,
after receiving the verdict, the judge recited that the jury verdict was “no”
on the “sudden passion” issue and that punishment was assessed at fifty–five
years of imprisonment.  The jury was
polled and asked if the judge had recited their verdict correctly.  Each juror agreed that it had been recited
correctly.  

            The jury charge instructed the jury
that the verdict was to be unanimous and did not permit the jury to decide the “sudden
passion” issue on less than a unanimous basis. 
The instructions could have more clearly stated that the finding on the
issue of “sudden passion” had to be unanimous, but we hold that the
instructions were sufficiently clear that Appellant did not suffer egregious
harm.  We overrule Appellant’s eighth
issue.

 

 

Disposition

            We affirm the judgment
of the trial court.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

Opinion delivered July 26, 2006.

Panel
consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)











[1] The State argues that
a juror may not testify about deliberations. 
See Tex. R. Evid. 606(b).  This objection was not raised in the trial
court, and this type of evidence may be considered when it is admitted without
objection.  See Salazar v. State,
38 S.W.3d 141, 147 n.3 (Tex. Crim. App. 2001).